**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF BANKING AND SECURITIES<br><br>Plaintiff,<br><br>v.<br><br>TITLEMAX OF DELAWARE, INC.<br>TITLEMAX OF OHIO, INC.<br>TITLEMAX OF VIRGINIA, INC.<br>TITLEMAX OF SOUTH CAROLINA, INC.<br>TITLEMAX.COM<br>TITLEMAX FUNDING, INC.<br>And all successors or predecessors in interest, affiliates, subsidiaries, or parent companies, however named.<br><br>Defendant. | : | CIVIL ACTION<br><br>NO. 1:17-cv-02112-YK<br><br>The Honorable Yvette Kane |

**DEFENDANTS' RESPONSE IN OPPOSITION**
**TO PLAINTIFF'S MOTION TO REMAND**

This action is, and has been since its inception more than two years ago, inextricably intertwined with an earlier filed matter that is still pending in the United States District Court for the District of Delaware, *TitleMax of Delaware, Inc., et al. v. Weissmann*, No. 17-cv-1325 (the "Delaware Action"). At the core of both cases is the same legal issue—whether the Commonwealth of Pennsylvania

Department of Banking and Securities (the "Department") has the authority under the United States Constitution to regulate and investigate certain aspects of TitleMax's operations, specifically, the terms of loan agreements executed by Pennsylvania residents at TitleMax stores outside of Pennsylvania. The primary beneficiaries of the Department's actions (borrowers who reside in Pennsylvania) and the Due Process and Commerce Clause issues being expressly litigated in the Delaware Action are also implicated here, and, similarly, this matter belongs in a federal forum. The Department's motion to remand should be denied.

## I. Relevant Background[1]

TitleMax offers or facilitates installment loans to consumers secured by their motor vehicles. (Dkt. 1-2 ¶ 4, Department's Petition.) TitleMax has no physical locations in Pennsylvania, nor does it offer or facilitate loans or otherwise operate in Pennsylvania. (*Id.* ¶¶ 4-6, 19.) TitleMax only makes (or previously serviced) loans in-person to borrowers who visit or visited its brick-and-mortar stores, none of which are in Pennsylvania. (*See id.* ¶ 22.)

In December 2016, the Department began an investigation into TitleMax's operations. (*Id.* ¶ 8.) Specifically, the Department was investigating

[1] As the Court is already aware of the factual and procedural history of this matter, given the numerous joint motions to stay and status updates provided by the parties (e.g., Dkts. 20, 28, 32), TitleMax will only briefly recite the relevant background here.

whether TitleMax had entered into loan agreements with at least 290 specific Pennsylvania borrowers in violation of the Consumer Discount Company Act ("CDCA"), 7 P.S. § 6201 *et seq.*, and the Loan Interest and Protection Law ("LIPL"), 41 P.S. § 101 *et seq.*, both of which limit the interest rate a lender may charge on a Pennsylvania loan. (*See* Dkt. 1-2 ¶¶ 9-10.)

In August 2017, in furtherance of its investigation, the Department issued a subpoena to TitleMax seeking voluminous records, including the loan files of each borrower whom it believed resides or resided in Pennsylvania, pursuant to its purported authority to investigate TitleMax for potential violations of LIPL and CDCA. (Dkt. 1-2 at 14-19, Subpoena.)

In September 2017, TitleMax responded by commencing the Delaware Action challenging the Department's attempt to regulate commercial activity that takes place wholly outside of the Commonwealth of Pennsylvania, which violates the United States Constitution. (*E.g.*, Dkt. 7 at 6.) Shortly thereafter, the Department filed a petition in state court to enforce the subpoena,[2]

[2] The Petition was brought against TitleMax of Delaware, Inc., TitleMax of Ohio, Inc., TitleMax of Virginia, Inc., TitleMax of South Carolina, Inc., TitleMax.com, TitleMax Funding, Inc., and all successors or predecessors in interest, affiliates, subsidiaries, or parent companies, however named (collectively "TitleMax"). TitleMax.com is not a legal entity, and the language regarding "all successors or predecessors in interest, affiliates, subsidiaries, or parent companies, however named" does not sufficiently identify any particular defendant. Accordingly, the use of the term "TitleMax" in this brief is in no way a concession that these entities are proper defendants in this matter.

which TitleMax timely removed to this Court. (Dkt. 1.) TitleMax was the first party to file suit, with the Department doing so only after being sued in Delaware federal court. If this Court were to deny the petition for remand, which we think is appropriate, TitleMax would move to dismiss this case in deference to the Delaware Action.

The Department has repeatedly agreed that the fundamental legal issue—the Department's authority to regulate and investigate TitleMax—is at the center of both this matter and the Delaware Action. (*See* Dkt. 22 ¶ 4 (joint status report), Dkt. 34 ¶ 1 (same).)

## II. Legal Standard

Pursuant to 18 U.S.C. § 1441(a), a defendant may remove a civil action initiated in state court when a federal district court has original jurisdiction over the matter. Original jurisdiction can be based upon diversity of citizenship between the parties and an amount-in-controversy that exceeds $75,000, *id.* § 1441(b) (citing 28 U.S.C. § 1332), or claims arising under the Constitution or laws of the United States, *id.* § 1441 (c) (citing 28 U.S.C. § 1331).

While a defendant bears the burden of showing that the district court has original jurisdiction, a district court is not limited to the facts set forth in the notice of removal when assessing the propriety of removal. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 947, 949 (11th Cir. 2000). Rather, a court

may consider "post-removal" facts that "'shed[ ] light on the situation which existed when the case was removed.'" *Id.* (quoting *Harmon v. OKI Sys.*, 115 F.3d 477, 479-80 (7th Cir. 1997)). As a result, "[r]emoving documents include '*all* documents before the court when it reviews the propriety of removal' that are relevant to making such assessments.'" *Pitts v. Ram Partners, L.L.C.*, No. 18-28, 2018 U.S. Dist. LEXIS 188744, at *5 (M.D. Ala. Nov. 5, 2018) (citation omitted).

## III. Argument

### A. Diversity Jurisdiction

#### 1. Pennsylvania Borrowers are the Real Parties-in-Interest

Evaluating diversity of citizenship requires that the real party-in-interest be "determined by looking at the 'essential nature and effect of the proceeding.'" *Ohio v. GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 744-745 (N.D. Ohio 2011) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)). In the majority of jurisdictions, in "'determining whether diversity of jurisdiction exists when a state official brings an action,'" courts will "'analyze real-party-in-interest questions by examining the state's interest in a lawsuit as a whole.'" *Id.* (citations omitted). Regardless of names, labels, and state laws invoked, where the state's ultimate goal is to obtain relief for a specific group of residents, those residents, not the state, are the real parties-in-interest. *See GMAC Mortg.*, 760 F. Supp. 2d at 749-750 (finding Ohio homeowners who had obtained mortgages from a specific lender were the real parties-in-interest because they

were the primary beneficiaries of the Ohio Attorney General's action regarding that lender's mortgage foreclosure practices).

Here, the Department's investigation of TitleMax, which it attempts to further through enforcement of the subpoena, will likely primarily benefit the Pennsylvania residents who obtained loans from TitleMax. While the Department may claim its actions are motivated by a general interest in protecting Pennsylvania residents against certain types of lending activities, the reality is that its actions are primarily focused on a single company and a small subset of residents, namely, the several hundred or so who voluntarily traveled outside Pennsylvania to execute loan agreements with TitleMax. Consequently, those residents are the real parties-in-interest and they are citizens of Pennsylvania for purposes of assessing diversity jurisdiction.

**2. Amount-in-Controversy Exceeds $75,000**

Where an alleged violation of Pennsylvania's lending laws has been asserted, the amount-in-controversy can include the potential relief to the affected borrowers. *See GMAC Mortg.*, 760 F. Supp. 2d at 747 (finding diversity jurisdiction requirements met where attorney general sought declaratory, injunctive, and monetary relief on behalf of a subset of state residents).

The Department has alleged that the TitleMax entities are "unlicensed persons or entities engaged in lending activities" in Pennsylvania, and it

specifically seeks information to determine whether TitleMax has made loans to at least 290 Pennsylvania residents in violation of, among other statutes, the LIPL. (*See* Dkt. 1-2 ¶¶ 10, 13.) LIPL limits the amount of interest a lender may charge, and permits a borrower to recover "triple the amount" of any excess interest paid. 41 P.S. § 502. LIPL would also enable the Department to, among other remedies, order TitleMax to "make restitution for actual damages to any aggrieved person." 41 P.S. § 506(c). Given the Department's focus on the loan agreements of several hundred Pennsylvania residents, and the remedies available to those residents under the LIPL, the amount-in-controversy at issue as a result of the Department's investigative activities easily surpasses the $75,000 required under 28 U.S.C. § 1332.

### B. Federal Question Jurisdiction: Plaintiff's Actions Raise Substantial and Disputed Issues of Federal Law

In the alternative, this Court has federal question jurisdiction because the Department's subpoena enforcement action raises substantial and disputed issues of federal law. While "less frequently encountered," federal question jurisdiction will also "lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg.*, 545 U.S. 308, 312 (2005). As the United States Supreme Court explained, the "doctrine captures the commonsense notion that a federal court ought to be able to hear claims

recognized under state law that nonetheless turn on substantial questions of federal law[.]" *Id.*

Specifically, a district court has jurisdiction over a matter where a state law claim raises a substantial and disputed issue of federal law. *Id.* at 314; *see also Koresko v. Murphy*, 464 F. Supp. 2d 463, 467 (E.D. Pa. 2006) ("A case 'arise[s] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted).

Here, even though the Department's action to enforce its subpoena is based upon Pennsylvania law, the actual enforceability of that subpoena "depends on a resolution of a substantial question of federal law"—whether the Department has the authority under the United States Constitution to regulate and investigate commercial activity—TitleMax's loan agreement terms—that takes place wholly outside the Commonwealth of Pennsylvania. Given the significance of this federal issue, the Court has jurisdiction to hear this case.

In the Delaware Action, TitleMax, pursuant to efforts to try to resolve the dispute with the Department, has already produced more than a thousand pages of records to the Department, all of which would be responsive to the subpoena.[3]

---

[3] TitleMax provided these records to the Department pursuant to settlement negotiations and as directed by the Delaware court, not in acquiescence to the Department's subpoena.

Further, the Delaware Action is likely to be fully briefed and ready for decision by the court no later than early April. The Department already has in its possession enough information to have a full and complete understanding of how TitleMax conducts its business. We ask the Court to consider the motion to stay, or, in the alternative, transfer to the District of Delaware (Dkts. 6, 35, 41) to allow the Delaware case to conclude, which will likely make this case moot regardless of how the Delaware court decides the case.

## IV. Conclusion

For the foregoing reasons, TitleMax requests that this Court deny Plaintiff's motion to remand the case to Pennsylvania state court.

Dated: November 15, 2019

Respectfully submitted,

/s/ *Richard J. Zack*

Richard J. Zack (PA 77142)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
215.981.4750 (fax)
zackj@pepperlaw.com

Justin G. Weber (PA 89266)
PEPPER HAMILTON LLP
100 Market Street, Suite 200
P.O. Box 1181
Harrisburg, PA 17108-1181
717.255.1155
717.238.0575 (fax)
weberjg@pepperlaw.com

*Counsel for Defendants TitleMax of Delaware, Inc., TitleMax of Ohio, Inc., TitleMax of Virginia, Inc., TitleMax of South Carolina, Inc., TitleMax.com, TitleMax Funding, Inc., and all successors or predecessors in interest, affiliates, subsidiaries, or parent companies, however named.*

**CERTIFICATE OF SERVICE**

I, Richard J. Zack, hereby certify that on November 15, 2019, a true and correct copy of the foregoing was served via ECF on all counsel of record.

*/s/ Richard J. Zack*
Richard J. Zack