# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF BANKING AND SECURITIES, | : : : : | Civil No. 1:17-cv-02112 |
| Plaintiff, | : : | |
| v. | : : | |
| TITLEMAX OF DELAWARE, INC., TITLEMAX OF OHIO, INC., TITLEMAX OF VIRGINIA, INC., TITLEMAX OF SOUTH CAROLINA, INC., TITLEMAX.COM, and TITLEMAX FUNDING, INC., | : : : : : : : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court in this proceeding that was removed from the Commonwealth Court of Pennsylvania are two motions: Plaintiff's motion for remand, Doc. 9, and Defendants' motion to stay proceedings, Doc. 6. As the removing party, Defendants bear the burden of proving this action is properly before this court. The court finds that Defendants fail to establish jurisdiction, because Plaintiff is an arm or alter ego of Pennsylvania, not a citizen; the $75,000 amount in controversy requirement is not met; and there is no federal question before the court in this action. Accordingly, for the reasons that follow, the court will grant Plaintiff's motion for remand and deny as moot Defendants' motion to stay proceedings. (Docs. 6, 9.)

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2016, Plaintiff Commonwealth of Pennsylvania Department of Banking and Securities ("the Department") began an investigation of TitleMax of Delaware, Inc., TitleMax of Ohio, Inc., TitleMax of Virginia, Inc., TitleMax of South Carolina, Inc., TitleMax.com, and TitleMax Funding, Inc. (collectively, "Defendants"). (Doc. 1.) An investigative subpoena was issued on August 22, 2017, using the authority granted to the Department under the Department of Banking and Securities Code, 71 Pa. Stat. § 733-401.F, the Consumer Discount Company Act, 7 Pa. Stat. § 6212 ("CDCA"), and the Loan Interest and Protection Law, 41 Pa. Stat. § 506 ("LIPL"). (*Id.* at 9.)[1] The subpoena was issued to obtain information to determine whether to charge Defendants with violations of the CDCA and LIPL. (*See* Doc. 10, p. 6.)

In September 2017, TitleMax responded by commencing an action in the United States District Court for the District of Delaware challenging the Department's "attempt to regulate commercial activity that takes place wholly outside of the Commonwealth of Pennsylvania, which violates the United States Constitution." (Doc. 44, p. 3.)

Thereafter, on September 22, 2017, the Department filed a petition for review to enforce an investigative subpoena and enjoin respondents ("the

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Petition") before the Commonwealth Court of Pennsylvania, as it has jurisdiction over original actions brought by an agency of the Commonwealth. (*Id.* at 8.) The Commonwealth Court required an answer to be filed by Defendants by November 22, 2017, and scheduled a hearing for December 1, 2017. (Doc. 1-3, p. 2.) On November 16, 2017, Defendants removed the Department's Petition from the Commonwealth Court to this court. (Doc. 1.)

On December 8, 2017, Defendants filed a motion to stay proceedings in this court pending the resolution of the related case in the District of Delaware or, alternatively, transfer this matter to that District. (Doc. 6.) The Department then filed a motion to remand this matter to state court on December 15, 2017, along with a supporting brief. (Docs. 9–10.) The parties subsequently agreed to several extensions of time and an eventual stay of this case pending their attempts to resolve these issues amicably. (Docs. 12, 14, 16, 18, 21, 24, 27, 29, 31, 33.)

On June 10, 2019, the parties agreed to move forward with this case and requested briefing deadlines for the motion to stay and motion to remand, which the court granted on June 12, 2019. (Docs. 34, 36.) Defendants filed a brief in support of their motion to stay on June 10, 2019, the Department opposed the motion on July 1, 2019, and Defendants filed a reply on July 29, 2019. (Docs. 35, 37, 41.) On November 15, 2019, Defendants filed their brief in opposition to the Department's motion to remand, and the Department replied on December 9, 2019.

3

(Docs. 44, 47.) Accordingly, both motions are now fully briefed and ripe for disposition.

## STANDARD OF REVIEW

A defendant can remove a case to federal court if the court has original jurisdiction over the civil action. 28 U.S.C. § 1441. However, "removal statutes are to be strictly construed against removal and all doubts resolved in favor of remand." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)). Furthermore, "[t]he party asserting jurisdiction bears the burden of showing the action is properly before the federal court." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005).

## DISCUSSION

In its motion for remand, the Department argues that the court lacks diversity jurisdiction because the Department is a sovereign, not a citizen, and the amount in controversy is not met. (Doc. 10, pp. 10–21.) Defendants argue that Pennsylvania borrowers are the real parties in interest and that the amount in controversy exceeds $75,000, thus satisfying the diversity jurisdiction requirements. (Doc. 44, pp. 5–7.) Alternatively, Defendants assert that the court has federal question jurisdiction because the Department's actions raise substantial and disputed issues of federal law. (*Id.* at 7–9.)

### A. The Department is an "Arm or Alter Ego" of the Commonwealth of Pennsylvania

A state agency, such as the Department, is not a citizen of a state for the purpose of diversity jurisdiction if it is simply an "arm or alter ego of the State." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999) (citing *Moor v. Alameda Cty.*, 411 U.S. 693, 717–18 (1973)). To determine whether a state agency is an "arm or alter ego" of the state for establishing diversity jurisdiction, courts apply Eleventh Amendment immunity analysis. *Id.* The Third Circuit developed a three-part test to determine whether an entity is an "arm of the state" for the purposes of Eleventh Amendment immunity. *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018) (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)). The court should examine: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Id.* (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 546 (3d Cir. 2007)). Each factor is considered "co-equal" and "on the same terms." *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005); *Cooper v. Se. Pa. Transp. Auth.*, 548 F.3d 296, 302 (3d Cir. 2008).

According to the Department, it "is an executive agency within the jurisdiction of the Governor, sometimes called an administrative agency, created by the Pennsylvania Legislature. Administrative Code of 1929, Act of April 9,

5

1929, P.L. 177, § 201 as amended, 71 P.S. § 61." (Doc. 10, p. 7.) The Department also represents that any judgment against the Department would be paid by the Commonwealth; the Department is an administrative department within the executive branch of the Commonwealth, *see Witt v. Commonwealth, Dep't of Banking*, 387 A.2d 1310 (Pa. Commw. Ct. 1978); and the Department is not incorporated, pays no taxes, has only the authority provided by statute, acts under the direction of the Governor, and has no autonomy. (Doc. 10, pp. 12–13.)

Defendants do not contest the argument set forth by the Department. Defendants also do not address the three-part Eleventh Amendment immunity test established by the Third Circuit. In fact, Defendants do not point to any fact that contradicts the Department's assertion that it is a sovereign, not a citizen. To the contrary, in the notice of removal, Defendants concede that the Department is an executive agency of the Commonwealth of Pennsylvania. (Doc. 1, p. 3.) This is critical, because Defendants bear the burden of establishing that jurisdiction is proper.

Rather than responding to the "arm or alter ego" argument made by the Department under well-established Third Circuit precedent, Defendants instead rely on one non-binding decision to support their assertion that the real parties in interest in the Petition are Pennsylvania borrowers. (*See* Doc. 44, pp. 5–6.) In *Ohio v. GMAC Mortgage, LLC*, the sole case cited by Defendants, the state of

Ohio filed suit in state court seeking "relief from mortgage companies' use of 'robosigners' to process mortgage foreclosure paperwork." 760 F. Supp. 2d 741, 743 (N.D. Ohio 2011). In reviewing Ohio's motion to remand, the court examined Ohio's complaint as a whole to determine whether it was the real party in interest finding that "the real beneficiaries of the relief sought are a distinct and identifiable group of Ohio citizens." *Id.* at 745, 747. Defendants assert—without reference to any authority in support—that "the Department's investigation of TitleMax, which it attempts to further through enforcement of the subpoena, will likely primarily benefit the Pennsylvania residents who obtained loans from TitleMax." (Doc. 44, p. 6.)

In response, the Department points out that this is not an action to "regulate" Defendants. (Doc. 47, p. 2.) The Department further notes:

> Indeed, the Department has not even determined whether any regulation or other action is viable or necessary because the Department is completely in the dark regarding the extent of Defendants' business activities in Pennsylvania. That is the whole point of this action. The Department is seeking to obtain information so that it can make an informed determination regarding what, if any, steps may be necessary to ensure that Defendants are not violating Pennsylvania law.

(*Id.*) In summary, the Department concludes that it is "a state agency seeking to enforce a subpoena pursuant to state law in order to obtain information relevant to state consumer protection lending laws. Accordingly, the state is the real party in interest." (Doc. 47, p. 4.)

Courts within the Third Circuit have routinely held that the state is the real party in interest in actions brought by state agencies to enforce consumer protection or similar statutes against out-of-state defendants. *See, e.g.*, *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 755 (D.N.J. 2005) (quoting *Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 602, 605, 607 (1982)); *Levinson v. Continental Ins. Servs., Inc.*, 655 F. Supp. 275 (D. Del. 1987); *Pa. Human Relations Comm'n v. USAir, Inc.*, 615 F. Supp. 75 (W.D. Pa. 1985). The holding in the *GMAC* case cited by Defendants conflicts with this authority and, in any event, is not persuasive because it is factually inapposite. The proceeding that was removed to federal court in *GMAC* was an enforcement action filed by the state of Ohio against a mortgage lender seeking injunctive and declaratory relief as well as civil penalties. Here, the Defendants removed a proceeding filed by the Department that is merely seeking to enforce a subpoena for documents and information. For these reasons, the court is not persuaded by the analysis in the *GMAC* decision.

In conclusion, based on the uncontradicted argument made by the Department, which is supported by facts and authority, this Court determines that the Department is an "arm or alter ego" of the Commonwealth of Pennsylvania and not a citizen for purpose of determining whether this court has diversity jurisdiction in this proceeding.

### B. Even Assuming Diversity of Citizenship, the Amount in Controversy is not Established

Even assuming arguendo that the Department is a citizen, rather than a sovereign, Defendants have not established that the amount in controversy exceeds $75,000 for purposes of the diversity statute. *See* 28 U.S.C. § 1332. In their notice of removal, Defendants correctly state that the monetary value of a claim for equitable relief for the purpose of determining the amount in controversy is the value of the object to be gained by the plaintiff. (Doc. 1, p. 4.) *See In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994). Here, the "object to be gained" by the Department is clearly stated in the Petition originally filed in the Commonwealth Court of Pennsylvania:

> WHEREFORE, the Department of Banking and Securities respectfully requests this Honorable Court to enter an Order against Respondents requiring them to provide the information or documents required by the investigative subpoena, to enjoin them from further refusing any future requests for information made by the department, and to require Respondents to pay costs associated with bringing this action and conducting this investigation.

(Doc. 1-2, p. 13.) The Department submitted a "Bill of Costs" with their Petition, totaling $165.50. (Doc. 1-2, p. 21.)

Despite the clearly stated request for relief by the Department, Defendants offer a tortured analysis to assert that the real object of the Department is to collect penalties from Defendants that could total more than $75,000. (Doc. 44, pp. 6–7.) This assertion is simply not true in this proceeding. This proceeding is an action

seeking to enforce an investigative subpoena to which no penalties or damages attach. As a result, the Court concludes that the amount in controversy requirement is not established in this proceeding for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**C. Defendants Have Not Established Federal Question Jurisdiction**

In their notice of removal, Defendants rely exclusively on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1, p. 3.) Nonetheless, in their brief in response to the Department's motion to remand this proceeding to the Commonwealth Court of Pennsylvania, Defendants alternatively attempt to establish federal question jurisdiction pursuant to 28 U.S.C. § 1331, by arguing that the enforcement of the subpoena raises "substantial and disputed issues of federal law." (Doc. 44, p. 7.) After citing general case law regarding federal question jurisdiction, Defendants make a bare assertion—without reference to any authority whatsoever—that the enforceability of the Department's subpoena depends on "whether the Department has the authority under the United States Constitution to regulate and investigate commercial activity." (*Id.* at 8.)

Defendants point to the fact that they were the first party to file suit regarding this enforcement matter. (Doc. 44, p.4.) Defendants filed suit in the District of Delaware in September 2017, and soon thereafter, the Department filed an enforcement proceeding in the Commonwealth Court of Pennsylvania.

Defendants do not explain the significance of the order of filing. In any event, the court does not agree that the commencement of a suit in the District of Delaware—which assertedly raises a federal question—somehow creates federal question jurisdiction in this proceeding to enforce the Department's subpoena. Again, Defendants have not met their burden, and the court concludes that there is no federal question jurisdiction in this enforcement proceeding.

## CONCLUSION

The court lacks both diversity and federal question jurisdiction over this action. Accordingly, the Department's motion to remand will be granted and this action will be remanded to the Commonwealth Court of Pennsylvania. As a result, Defendants' motion to stay is moot. An appropriate order will issue.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 10, 2020